UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHN MARA,                          :
                                    :
        Plaintiff,                  :
                                    :
v.                                  :     Case No. 3:14-CV-01095 (RNC)
                                    :
GARY MACNAMARA, ET AL.,             :
                                    :
        Defendants.                 :
                                    :

<u>MEMORANDUM</u>

Plaintiff John Mara brings this action under 42 U.S.C. §
1983 against the Town of Fairfield, Fairfield police officers,
Fairfield University, and a University campus security officer
principally claiming that when he was a student at the University
he was falsely arrested for an off-campus assault.  The
University and its campus security officer, Patrick Cleary, have
moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to
dismiss the claims against them.  Their motion has been granted
in part and denied in part in an oral ruling.  This memorandum
provides a written statement of reasons for the ruling.

I. <u>Background</u>

The complaint alleges the following.  In December 2012, the
plaintiff was a senior at Fairfield University.  On New Year's
Eve, he attended a party at an off-campus house.  At the party,
another student was hit on the head with a bottle.  Police
officers from the Town of Fairfield investigated the assault.

1

The victim was unable to say who hit him.  The officers subsequently asked the University Public Safety Department for a photograph of the plaintiff and the University complied. Officers then spoke with a witness to the assault and showed her a photo array that included the photograph of the plaintiff supplied by the University.  The witness told the officers that a different person shown in the array committed the assault. Around this time, the investigating officers made contact with either the plaintiff or his attorney.  The officers indicated that the plaintiff was not a suspect, but they wished to speak with him nonetheless.  A meeting was scheduled to take place at police headquarters the next day, January 2.

On January 2, Town police officers drove to the University campus.  With the assistance of Officer Cleary, they located the plaintiff.  He was "detained," placed in a University vehicle driven by Cleary, and brought to the University Public Safety Office.[1]  Cleary gave the officers audio and video equipment to record the interrogation and permitted them to use the office but did not participate in the interrogation himself.  During the interrogation, plaintiff alleges, the officers engaged in abusive

---

[1]This part of the complaint (ECF No. 1, at 8) is less than perfectly clear about whether the plaintiff was seized or agreed to accompany the officers.  But for purposes of this motion, the defendants assume that the plaintiff was arrested.  See ECF No. 41-1, at 7 n.1 ("The University Defendants . . . will assume [probable cause was required] for purposes of the alleged actions by the FPD.").

tactics by telling him he would be put in jail if he did not confess, calling him a "sociopath," and misrepresenting evidence against him.

Plaintiff did not confess.  Officers then contacted the witness who had been shown the photo array and showed her a second array that contained the same photo of the plaintiff.  It appears (though it is not perfectly clear) that at this time the witness identified the plaintiff as the assailant.  Officers then obtained a warrant for the plaintiff's arrest.  The charges against the plaintiff were eventually dropped after the state determined that someone else committed the assault.

In the meantime, the University was conducting its own disciplinary proceedings.  In April 2013, the University convened a Student Conduct Board to determine whether the plaintiff was guilty of misconduct.  After he refused to speak in his own defense, citing the pending criminal case against him, the Board found that he had committed the assault.  The Dean dismissed him from school and barred him from campus.  Nine days after the Board rendered its decision, the plaintiff lodged an appeal supported by an investigative report tending to show that someone else was the assailant.  The University granted him a new hearing.  In early May, the Board reconvened, and the Dean found that the plaintiff had not personally committed the assault.  She also found, however, that he had violated the student code

through "fighting, threat of force, bodily harm, disorderly conduct and off-campus misconduct."  ECF No. 1, at 23.

Pursuant to the Dean's decision, the plaintiff was reinstated as a student.  But he was not permitted to walk at graduation, participate in any Senior Week activities, or enter campus without permission.  Later in May, the Dean reconsidered her earlier decision and found the plaintiff responsible only for "disorderly conduct and off-campus misconduct."  Id.

Naming as defendants the Town, Town police officers, the University and Cleary, the complaint asserts fifteen counts:

- Count One: Violation of Fourth, Fifth, Fourteenth Amendments (Town, Town Officers, University, Cleary)
- Count Two: Violation of Fourth, Fourteenth Amendments (Town, Town Officers, University, Cleary)
- Count Three: False arrest (Town, Town Officers)
- Count Four: Intentional Infliction of Emotional Distress ("IIED") (Town Officers)
- Count Five: Negligent Infliction of Emotional Distress ("NIED") (Town, Town Officers)
- Count Six: Negligence (Town, Town Officers)
- Count Seven: Indemnification (Town)
- Count Eight: Negligence (University)
- Count Nine: Breach of agreement (University)
- Count Ten: Negligent misrepresentation (University)
- Count Eleven: IIED (University)
- Count Twelve: NIED (University)
- Count Thirteen: Invasion of privacy (University)
- Count Fourteen: Recklessness (Town, Town Officers, University)
- Count Fifteen: Aiding and abetting (Town, Town Officers, University, Cleary)

Cleary and the University have moved to dismiss all claims against them.

II. Discussion

4

A Rule 12(b)(6) motion tests a complaint's legal sufficiency.  To withstand such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)).  Review under Rule 12(b)(6) occurs in two steps.  First, the court must separate the complaint's well-pleaded factual allegations from its legal conclusions.  Well-pleaded facts are accepted as true and viewed in the light most favorable to the plaintiff.  Id.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," must be disregarded.  Id.  Second, the court must determine whether the well-pleaded facts in the complaint support a plausible inference that the plaintiff is entitled to relief.  Id.  This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Twombly, 550 U.S. at 556).  A complaint containing facts "that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Id. (quoting Twombly, 550 U.S. at 557).

A. Counts One and Two: State Action and "Under Color of Law"

The first two counts of the complaint, brought under 42

5

U.S.C. § 1983, are viable only if Cleary and the University may be regarded as state actors who acted "under color of law." Ginsberg v. Healey Car & Truck Leasing, Inc., 189 F.3d 268, 271 (2d Cir. 1999). I conclude that these defendants are properly characterized as state actors as to some of their alleged acts, but not all.[2]

1. Providing the Photograph

After the assault, an unknown University official provided the Town with a photograph of the plaintiff. Town officers later used it in the photo arrays shown to the witness. Plaintiff argues that this constitutes "joint action" rendering the University a state actor under § 1983.

Private parties "jointly engaged with state officials in [a] prohibited action are acting 'under color' of law for purposes" of § 1983. Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S. Ct. 1598, 26 L.Ed.2d 142 (1970). A person is "jointly engaged" with state officials in illegality if he "is a willful participant in joint activity with the State or its agents." Id. The cases often state that joint action is akin to a conspiracy: it "requires an agreement or meeting of the minds to violate federally protected rights." MARTIN A. SCHWARTZ, SECTION 1983 LITIGATION: CLAIMS & DEFENSES § 5.16[A] (4th ed. 2014); see also

---

[2]This discussion assumes the University is properly chargeable with the alleged wrongdoing. That issue is taken up in Part II.B, *supra*.

Forbes v. City of New York, No. 05 Civ. 7331 (NRB), 2008 WL 3539936, at *5 (S.D.N.Y. Aug. 12, 2008) ("The touchstone of joint action is often a plan, prearrangement, conspiracy, custom or policy shared by the private actor and the police." (internal quotation marks omitted)).

Defendants argue that under this standard, the University's act of providing the plaintiff's photograph to the Town does not make it a state actor under § 1983.  I agree.  Supplying information to the police does not by itself turn a private person or entity into a state actor.  Castro v. Cnty. of Nassau, 739 F. Supp. 2d 153, 160 (E.D.N.Y. 2010).  In the absence of an allegation that the University official who supplied the photo knew of the Town's plan to violate the plaintiff's constitutional rights, the joint action doctrine does not apply.  The complaint contains no such allegation.  I therefore conclude that the § 1983 claims against the University and Cleary should be dismissed insofar as they rely on the provision of the photograph.[3]

## 2. Participating in the Arrest; Providing Space and Audio-Visual Equipment

Defendants argue that the University and Cleary were not state actors when they participated in the plaintiff's detention and facilitated his interrogation.  They rely on language from cases suggesting that to be a joint participant in

---

[3] Cleary is not alleged to have been involved in the decision to turn over the photograph.

unconstitutional behavior, a private party must act "willfully," with an "unconstitutional goal."  See, e.g., Cunningham v. Southlake Center for Mental Health, Inc., 924 F.2d 106, 107 (7th Cir. 1991).  The actor must intend, in other words, not merely to perform the unconstitutional act, but to bring about a result known to be unlawful.  He must also share this intent with the actual state agent.

Defendants cite a number of cases containing language that seems to support their position.  But those cases involve citizens participating in police action only tangentially.  When private involvement in an arrest is indirect, the "willfulness" standard makes sense: the private party can be likened to a co-conspirator who should not be held liable without intent to further an unlawful aim.

This case is different.  Here, Cleary participated alongside Town officers in making an arrest and therefore was directly involved in the alleged constitutional violation.[4]  In these

---

[4]As discussed in n.1, *supra*, defendants concede that the police action in which Cleary participated was an arrest.  During a telephone conference on March 4, 2015, defendants argued that they had not made such a concession.  However, defendants' memorandum in support of their motion to dismiss reads: "The University defendants disagree that probable cause was required for the alleged actions of which Plaintiff complains but will assume it was for purposes of the alleged actions by the FPD." ECF No. 41-1, at 13 n.1.  By "assum[ing]" that probable cause was required, defendants effectively concede (for purposes of this motion) that plaintiff was arrested: when the police stop a person, probable cause is required only if the stop qualifies as an arrest.

circumstances, there is little reason to withhold the state actor
label simply because the private party did not intend to cause a
result he knew to be unconstitutional.  The more sensible
requirement is that the private party simply intend to help the
state further its aims.  The case law does not go to great
lengths to articulate this distinction, but it is borne out in
the results.

In Jackson v. Pantazes, 810 F.2d 426 (4th Cir. 1987), for
instance, the Fourth Circuit analyzed the state action question
using the standard of Lugar v. Edmondson Oil Co., 457 U.S. 922,
102 S. Ct. 2744, 73 L.Ed.2d 482 (1982) to determine that a bail
bondsman was a state actor:[5]

> In seeking to apprehend Frank R. Jackson, a
> fugitive from justice, Pantazes, the bondsman, was
> exercising powers conferred on him by state law. . . .
> [Furthermore], Pantazes obtained significant aid from
> Goldberg, the police officer, who was unquestionably
> exercising state authority.  Goldberg not only assisted
> in gaining access to the Jackson home, he assisted in
> dragging Mrs. Jackson from the doorway . . . . This

---

[5]Lugar held that a private individual is a state actor when
1) the deprivation is caused by the exercise of a right or
privilege created by the state; and 2) the party charged with the
deprivation can fairly be said to be a state actor, either
because he is a state official, has "acted together with or has
obtained significant aid from state officials," or "because his
conduct is otherwise chargeable to the state."  The parties do
not discuss Lugar in any detail, and the case is properly
confined to its factual setting: prejudgment attachment statutes
that give near-automatic legal effect to actions taken by private
parties.  (Indeed, the case purports to so limit itself.  Id. at
939 n.1.)  Lugar is nonetheless informative to the extent it
omits to mention questions of shared unconstitutional intent.

9

> participation by a state official suffices to render
> Pantazes a state actor for purposes of § 1983. [I]n
> cases where a private party and a public official act
> jointly to produce the constitutional violation, [the
> private party is a state actor].

Pantazes, 810 F.2d at 429.  Courts have reached similar results by focusing on coordinated action and shared aims, rather than specific unconstitutional intent, in a variety of analogous cases.  See Berger v. Hanlon, 129 F.3d 505, 515 (9th Cir. 1997), vacated on other grounds by 526 U.S. 808 (members of the media who accompanied police on a search were state actors because the government and media agreed "to engage jointly in an enterprise that only the government could lawfully institute – the execution of a search warrant – for the mutual benefit of both the private interests of the media and the government officials' interest in publicity"); DeMeo v. Kean, 754 F. Supp. 2d 435, 442 (N.D.N.Y. 2010) (a bouncer who helped a police officer drag a patron out of a bar was a state actor).[6]

Here, at least with regard to the plaintiff's detention, the

---

[6]Another line of cases is not analogous to the facts in the complaint but undermines the notion that joint action requires shared specific unconstitutional intent.  It is well-settled that when a store owner and police form a "prearranged plan" under which police "agree to arrest anyone identified by the store as a shoplifter without independently evaluating the existence of probable cause," the store's detention of a shoplifter qualifies as state action.  SCHWARTZ, SECTION 1983 LITIGATION § 5.16[A].  Cases in this line do not examine the detaining employee's intent. They simply acknowledge that because of the plan, the store and the police are working in concert to achieve a common end.

facts align with this precedent rather than the cases cited by the defendants.  According to the complaint, the police wanted to arrest the plaintiff and Cleary undertook to help them.  The officers benefitted from Cleary's participation because he helped locate the plaintiff and transported the plaintiff to the campus security office.  That Cleary actually participated in the arrest then took the plaintiff to the Public Safety Office for interrogation renders him a state actor with regard to the false arrest claim.[7]

Even if the precedent were best read to require something like shared unconstitutional intent – which here would amount to Cleary's knowledge that probable cause was lacking – the allegations pertinent to the § 1983 false arrest claim still suffice to state a claim against Cleary.  Defendants argue that "there is no allegation that either University Defendant knew probable cause was lacking."  ECF No. 41-1, at 7.  But the

---

[7]In resisting this conclusion during the March 4 conference, defendants placed great weight on Harper v. Franklin & Marshall College, No. 10 Civ. 2647, 2011 WL 2746644 (E.D. Pa. July 14, 2011).  But Harper is distinguishable.  In that case, the plaintiff sued campus security guards for actions taken independent of municipal police officers.  See id. at *2 (a security guard tackled plaintiff and arrested him; no municipal officers were present at the scene).  Here, as discussed, defendants have conceded that the plaintiff was arrested on campus, and the complaint alleges that he was detained by both Town officers and Cleary.  Cleary therefore participated alongside municipal officers in an allegedly illegal arrest.  This side-by-side pursuit of a common goal was not present in Harper.

complaint does allege that the officers lacked even arguable probable cause, that they asked Cleary to help make the arrest, and that he did so.  These allegations support three possible inferences about Cleary's state of knowledge when he helped make the arrest.  One is that the officers lied to him and said there was probable cause.  If that is true, Cleary acted innocently.  A second is that the officers simply asked Cleary to help detain the plaintiff without explaining why.  If that is true, there was arguably no agreement to pursue an unlawful aim.  A third is that Cleary learned the facts from the officers, knew probable cause was lacking, and nonetheless aided in the unconstitutional conduct.  If that is true, an unlawful agreement was struck and Cleary was a state actor.

Drawing on "judicial experience and common sense," Iqbal, 556 U.S. at 680, I cannot say that the third possibility is implausible.  Indeed, it may be the most plausible of all because it does not require the Court to assume either that Town officers lied to a University officer jointly involved in an investigation or that a campus security officer obligingly aided in the arrest of a student without bothering to ask why it was happening.

I therefore conclude that Cleary and the University were state actors with regard to the plaintiff's arrest and initial confinement in the Public Safety Office.  As far as defendants' motion to dismiss rests on the contrary view, it has been denied.

The complaint provides no basis, however, for holding Cleary or the University responsible for the conduct that occurred *during* the interrogation (that is, the threats and manipulative techniques allegedly employed by Town officers).  Cleary did not participate in the interrogation, and nothing in the complaint suggests that he knew the Town officers planned to use these methods and intended to facilitate their efforts.  That is what Adickes and its progeny would require.  Accordingly, as to those alleged violations, the claims against Cleary and the University have been dismissed.[8]

B. Monell

Defendants next argue that even if Cleary violated the plaintiff's constitutional rights, the University is not liable under § 1983.  I agree.  Monell's policy-or-custom standard for municipal liability applies to private entities that employ constitutional tortfeasors.  Rojas v. Alexander's Dep't Store, Inc., 924 F.2d 406, 408 (1990).  Plaintiff is therefore obliged to plead that "action pursuant to [University] . . . policy of some nature caused a constitutional tort."  Id. (internal quotation marks omitted).  The complaint alleges that the University "had an official policy that Public Safety Officers employed by Fairfield University would and did aid, abet and

---

[8]Count One is based entirely on the conduct of the interrogation.  Accordingly, the count has been dismissed in full.

13

assist the Fairfield Police in their investigations of students,"
and "this policy or custom" was "a moving force in the
deprivation of plaintiff's constitutional rights."  ECF No. 1, at
6.  Such conclusory allegations bereft of factual detail are
legally insufficient.  See Ward v. City of New York, No. 08 Civ.
7380 (RJH), 2010 WL 3629536, at *2 (S.D.N.Y. Sept. 17, 2010)
("[T]he complaint contains only conclusory allegations of policy
or custom, such as the assertion that the NYPD has a custom of
'arresting innocent persons.'"); EEOC of Nassau Cnty. v. Cnty. of
Nassau, 47 F. Supp. 2d 353, 370 (E.D.N.Y. 1999) ("The plaintiffs
do not proffer any facts in support of the conclusory allegation
that defendants' conduct amounts to a custom or policy, or that
this custom or policy caused the plaintiffs' injuries.").
Accordingly, the constitutional claims against the University
have been dismissed without prejudice.

C. Qualified Immunity

     Defendants argue that Cleary is entitled to qualified
immunity.  I disagree.  Under § 1983, a government official is
immune from suit in his personal capacity except for conduct that
violates clearly established law.  An official violates clearly
established law when, "at the time of the challenged conduct, the
contours of a right are sufficiently clear that every reasonable
official would have understood that what he is doing violates
that right." Ashcroft v. al-Kidd, __ U.S. __, 131 S. Ct. 2074,

2083, 179 L.Ed.2d 1149 (2011) (internal quotation marks omitted).
By penalizing only officials who cross obvious boundaries, the
doctrine of qualified immunity gives officials confidence to act
decisively in gray areas.

Here, the first question is whether qualified immunity
applies at all, given that Cleary is not a state actor for all
purposes.  Under Richardson v. McKnight, 521 U.S. 399, 404, 117
S. Ct. 2100, 138 L.Ed.2d 540 (1997), private actors are sometimes
entitled to claim qualified immunity: it depends on 1) history
and 2) the purposes of governmental immunities.  In Mejia v. City
of New York, 119 F. Supp. 2d 232 (E.D.N.Y. 2000), for example,
the Court undertook a lengthy analysis of historical practice and
functional considerations to determine that (in some
circumstances) mailing services that cooperate in police
investigations can claim qualified immunity.  At this stage, the
Richardson question need not be explored because Cleary is not
entitled to qualified immunity in any event.

In support of the argument for immunity, defendants first
argue that "as set forth above, Plaintiff's constitutional claims
each fail as a matter of law."  ECF No. 41-1, at 13.  But
defendants have not briefed the merits of the claims except with
respect to the state action question.[9]  Defendants may be arguing

---

[9]Defendants might be arguing that no constitutional
violation occurred because Cleary did nothing more than aid Town
officers in locating and transporting a witness who was willing

that Cleary is entitled to immunity because his status as a state
actor was not clear.  If so, the argument fails for several
reasons.  First, no case suggests that lack of clarity in the law
relating to the status of a person as a state actor – as opposed
to the law governing the primary conduct of state actors – can
support an immunity defense.  The precedent appears to take the
contrary view.  For instance, in Mejia, the court stated that the
threshold question, the availability of immunity, was
"surprisingly novel."  Mejia, 119 F. Supp. 2d at 261.  It
nonetheless determined that although immunity was potentially
available to defendants like the one before it, the defendant
could not claim immunity on the facts of the case.  Id. at 271.
If blurry lines in the law of state action can give rise to
qualified immunity, that result must be in error: constitutional
tortfeasors need not answer in their personal capacities for
guessing wrong on "surprisingly novel" legal questions.  I
therefore conclude that defendants cannot support their immunity
argument by reference to lack of clarity in the rules that
determine whether a person is a state actor.

Second, even if such a theory can in some circumstances
support a qualified immunity argument, it does not in this case.
As discussed in Part II.A., *supra*, there are two independent

---

to speak with them.  Again, defendants' concession that plaintiff
was arrested precludes this argument.

grounds for the conclusion that Cleary was a state actor.  The
first is that the "shared unconstitutional intent" standard urged
by defendants does not apply when a private party directly
participates in illegal action alongside police, as Cleary
allegedly did.  The second is that even under that standard, the
complaint plausibly alleges that Cleary knew probable cause was
lacking but aided the Town officers nonetheless.  Even if
Cleary's liability under the first theory was not clear at the
time of his conduct – a question I need not decide – his
liability under the second undoubtedly was.  <u>Adickes</u> makes it
plain that a private party's willful participation in known
illegality is joint action.

Defendants also raise an argument based on the law governing
searches and seizures, rather than the law governing state
action.  They argue that a police officer is entitled to
qualified immunity for a false arrest if probable cause was
"arguably" present, <u>Martinez v. Simonetti</u>, 202 F.3d 625, 634 (2d
Cir. 2000), and actual (not just arguable) probable cause
generally lies when officers rely on the word of fellow officers
that probable cause exists, <u>Panetta v. Crowley</u>, 460 F.3d 388, 395
(2d Cir. 2006).  Here, defendants assert, Cleary relied on the
word of Town officers in arresting the plaintiff.

If this is true, Cleary is not just entitled to qualified
immunity: he has not violated the Constitution at all.  But, as

discussed above, it is not clear that this is true.  The complaint says nothing about what Town officers told Cleary and it is plausible to infer that they did not lie to him about the existence of probable cause.  On defendant's motion to dismiss, I must assume that they did not, and that Cleary participated in the plaintiff's arrest even though he knew probable cause was lacking.  Thus, Cleary is not at this juncture entitled to qualified immunity.

D. <u>Fifth Amendment</u>

Defendants argue that the § 1983 due process claims should be dismissed because the Fifth Amendment's Due Process Clause does not apply to municipal actors.  I agree and, accordingly, these claims have been dismissed.

E. <u>Negligence and the Wrongful Detention Claims</u>

Defendants assert that the counts alleging negligence based on the plaintiff's unlawful detention should be dismissed.  Their supporting arguments are considered in turn.

1. <u>No Duty</u>[10]

---

[10]I analyze the question of duty with respect to Cleary's conduct in detaining the plaintiff and taking him to the Public Safety Office for interrogation.  As for the furnishing of Mara's photograph, the no-duty argument has merit.  In Connecticut, there is no duty to act without negligence in giving information to the police.  <u>LaFontaine v. Family Drug Stores</u>, 33 Conn. Super. 66, 76 (1976) <u>abrogated on other grounds by</u> 188 Conn. 107 (1982).  Accordingly, the negligence claim has been dismissed insofar as it seeks relief for the provision of his photograph to the officers.

Defendants argue there should be no duty in negligence when a "Public Safety Officer" is "acting at the request of police." They provide the example of <u>Jaworski v. Kiernan</u>, 241 Conn. 399 (1997), in which the Connecticut Supreme Court held that people participating in recreational soccer matches owe each other no duties in negligence – only duties not to be reckless or malicious.  The Court reached this conclusion after considering four factors: 1) the normal expectations of the participants in the activity under review; 2) the public policy of encouraging participation in the activity, while weighing the safety of the participants; 3) the avoidance of increased litigation; and 4) the decisions of other jurisdictions.

*Normal expectations*.  Defendants submit that "a Public Safety Officer, acting at the request of police, should not expect to be held civilly liable for his reasonable actions." ECF No. 41-1, at 16.  I agree.  But under the law of negligence people are not held liable for reasonable actions, unreasonableness in the circumstances being an element of a negligence claim.  Under the law of negligence, moreover, that a campus security officer took part in the arrest of a student at the request of police would bear on whether he acted reasonably. Requiring due care on the part of a campus security officer in such circumstances is therefore compatible with normal expectations.

*Public policy of encouraging participation, while weighing safety.* Under Connecticut law, police officers participating in arrests can be held liable in negligence. See, e.g., Odom v. Matteo, 772 F. Supp. 2d 377, 393–94 (D. Conn. 2011). There is no compelling need to adopt a more lenient standard for campus security guards in order to encourage them to actively assist police in arresting students on campus.

*Avoiding increased litigation.* At present, security guards are under a duty to act non-negligently when they assist police. But courts see few security-guard-negligently-helping-police cases.

*Decisions from other jurisdictions.* Defendants cite only one case: Bromund v. Holt, 129 N.W.2d 149 (Wisc. 1964). Bromund held that a medical examiner performing an autopsy at the behest of police owed no duty to the plaintiff (who was arrested for murder because of the examiner's erroneous conclusions) to exercise reasonable care in guarding against the possibility of arrest and criminal prosecution of third parties. This case is analogous to Connecticut's existing immunity for people who provide information to the police,[11] not to a case like this one in which a person actively participates in an arrest. I

---

[11]This immunity does not run to active participation in an arrest: a duty in negligence has always existed when "a private citizen makes a private arrest of another citizen by detaining or confining him." LaFontaine, 33 Conn. Sup. at 75.

therefore conclude that the no-duty argument should be rejected.

2. <u>No Liability for the Photograph</u>

Defendants argue they are not liable in negligence for giving the photograph to the Town.  For the reasons discussed above in footnote 11, I agree.  Moreover, when a defendant's negligent act is followed by the malicious act of a third party that causes injury, the defendant's act can be held to have caused the injury only if the malicious act was foreseeable and the defendant's act was a substantial factor in causing the injury.  <u>Monk v. Temple George Assocs., LLC</u>, 869 A.2d 179, 190 (Conn. 2005) (jury might reasonably find defendant's negligence in operating its parking lot proximately caused plaintiff's injury at the hands of an attacker, given the area's crime statistics and the likely deterrent effect of an attendant).  Here, nothing suggests the University should have guessed that after obtaining the plaintiff's photograph, Town officers would undertake to violate the plaintiff's rights as alleged.

Defendants also argue that they were entitled to disclose the photograph under FERPA, so cannot be held liable in negligence.  I need not reach this argument.

3. <u>No Breach</u>

Defendants argue that Cleary acted reasonably because he simply assumed the police were telling him the truth about the existence of probable cause for the arrest.  As discussed above

in Parts II.A. and II.C., the complaint plausibly alleges that
Cleary knew probable cause was lacking.

Accordingly, the negligence claim against the moving
defendants relating to the plaintiff's allegedly wrongful
detention has been dismissed only insofar as it relies on
providing the plaintiff's photograph to the Town.

F. Negligence and the Wrongful Discipline Claims

Plaintiff asserts a claim of negligence based on the
University's imposition of discipline following his arrest.
Defendants argue that this claim is barred by the Connecticut
Supreme Court's decision in Gupta v. New Britain General Hosp.,
239 Conn. 574 (1996).  I agree in part.

Gupta establishes that there is no such thing as a tort
claim of "educational malpractice" against an institution of
learning.  Under Gupta, tort or contract claims challenging a
school's curricular program, academic choices or disciplinary
decisions are disallowed.  Id. at 590; Jacobs v. Ethel Walker
Sch., Inc., No. CV020515279S, 2003 WL 22390051, at *4 (Conn.
Super. Sept. 30, 2003) ("It is a well established principle that
courts should exercise caution in interfering with school
discipline.").  There are three exceptions to this rule: (1) when
a student can show that "the educational program failed in some
fundamental respect, as by not offering any of the courses
necessary to obtain certification in a particular field," Gupta,

239 Conn. at 592; (2) when "the educational institution failed to fulfill a specific contractual promise distinct from any overall obligation to offer a reasonable program," id. at 592-93; and (3) when the educational institution acted "arbitrarily, capriciously or in bad faith," id. at 595.[12]  These exceptions apply to some of plaintiff's theories of negligence but not all.

Plaintiff argues that the University "failed to fulfill a specific contractual promise" when it dismissed him and barred him from campus because the Student Handbook provides for a different penalty: a $200 fine and a formal warning.  ECF No. 60-1, at 9.  I disagree with plaintiff's reading of the Handbook.  Though a fine and a warning are set out as "standard penalties" for "off-campus misconduct," the Handbook makes clear that the Dean reserves the right to review determinations made by the Student Conduct Board and make her own decisions regarding "responsibility, as well as sanctions."  Id. at 11; Bass, 738 F.

_____

[12]There is some confusion about whether claims made pursuant to Gupta's exceptions are in tort or contract.  Courts generally seem to agree that claims under the first two exceptions are in contract.  As for the third, Gupta itself contemplates that arbitrary conduct can "constitute[] a breach of an educational contract by a private institution." Gupta, 239 Conn. at 595.  Other courts, however, seem to hold that when a school acts arbitrarily, the claim sounds in tort; Gupta, in other words, serves basically to loosen the standard of care for educational institutions.  See Bass ex rel. Bass v. Miss Porter's School, 738 F. Supp. 2d 307, 327 (D. Conn. 2010).  This question bears on a related issue: whether a plaintiff can assert any unintentional tort claim (say, negligent misrepresentation or NIED, as opposed to straight negligence) against an educational institution.  The issue is discussed below.

Supp. 2d at 323 (granting summary judgment to defendant on a similar claim because of a Handbook provision stating, "The Head of School reserves the right to dismiss a student from Miss Porter's School.").  This theory therefore fails.

Plaintiff also argues that the University was negligent in providing his photograph to the Town.  He identifies no contractual provision stating the University would not do this.  At all events, this claim fails for other reasons, as discussed above.

Plaintiff argues that the University promised in the Handbook to "treat him fairly and respect his rights as a student and citizen."  ECF No. 54-1, at 32.  This "promise" is too vague to qualify as a "specific contractual promise" under the second Gupta exception.  Faigel v. Fairfield Univ., 815 A.2d 140, 143 (Conn. App. 2003) (rejecting plaintiff's claim that defendants' pledge to accept "many credits" from her former college was a specific promise: "How many is many?"); Kloth-Zanard v. Amridge Univ., No. 3:09 Civ. 606 (JBA), 2012 WL 2397161, at *4 (D. Conn. June 25, 2012) (a promise to "assist" a student in getting work at a clinic is too vague to support a claim).

Finally, plaintiff argues that the University's disciplinary decisions were arbitrary and capricious.  To sustain this claim, plaintiff must show that the school's decisions "had no discernable rational basis."  Bass, 738 F. Supp. 2d at 327

(internal quotation marks omitted).  This standard is not met
with regard to the school's initial decision to dismiss the
plaintiff and bar him from campus because at that point he had
been arrested for a violent assault.  See id. (school had a
rational basis to dismiss plaintiff because she violated a Major
Rule by drinking, and violation of a Major Rule is punishable by
dismissal).  Plaintiff does, however, state a claim concerning
the discipline imposed by the University after the Dean
determined on May 8 that he had not committed the assault.  If it
is true, as plaintiff alleges, that the only possible basis for
disciplining him was that he actually committed the assault – if,
for instance, the victim was hit by one person acting alone and
no other violence attended the incident – plaintiff is correct:
there was no rational basis to impose punishment.  Discovery
might reveal that the plaintiff had some peripheral role in the
assault that merited discipline.  But the complaint does not
suggest this is the case, and for now the Court must assume it is
not.  In this one respect, then, plaintiff states a claim under
Gupta.

G. Breach of Agreement

Count nine of the complaint alleges "breach of agreement"
based on the same conduct discussed in the previous section.
Defendants argue that this count should be dismissed because the
allegations sound in tort, not contract – plaintiff has simply

relabeled his tort action as a contract action.  That is largely correct.  But as discussed above, Gupta itself appears to re-label tort actions as contract actions: the case bars negligence claims against educational institutions as a general matter, but it admits of some exceptions that sound essentially in contract. This "breach of agreement" count, then, has not been dismissed.

H. Negligent Misrepresentation

In count ten, plaintiff alleges negligent misrepresentation. His claim is predicated on the following: 1) the University promised it would provide him with "the environment to learn, to pursue academic studies where he would be safe and have the opportunity to obtain a college diploma;" 2) it promised it would treat him fairly and give him a fair hearing if a disciplinary issue arose; and 3) it concealed that it would give his photograph to law enforcement on request.

Defendant argues that these allegations fail to state a claim under the law of negligent misrepresentation.  But before reaching those arguments, I must address the threshold issue, which defendant also discusses, of Gupta's relation to a claim of negligent misrepresentation (and other negligence-based causes of action, such as NIED).

The rule of Gupta might bear on plaintiff's negligent misrepresentation claim in one of three ways.  First, Gupta might have nothing to say about the cause of action: the case might be

26

limited to straight claims of negligence.  At least one
Connecticut case takes this view.  See Dietz v. Hamden Hall
Country Day Sch., No. CV990425791S, 2000 WL 1198010, at *2 (Conn.
Super. July 25, 2000) (a claim of negligent misrepresentation is
not affected by Gupta because it does not allege "negligent
education" or "education malpractice;" it alleges only that
school officials made statements they knew or should have known
to be false).  Second, Gupta might interact with other
unintentional torts alleging negligence in education by barring
them entirely – that is, it might permit only those claims
falling within its contract-like exceptions, converting to
contract claims those tort claims that qualify.  See Day v. Yale
Univ. Sch. of Drama, No. CV970400876S, 2000 WL 295612, at *9
(Conn. Super. Mar. 7, 2000) (striking NIED claim because "the
Connecticut Supreme Court has refused to recognize a cause of
action for educational malpractice sounding in tort").  A third
possibility, similar to the second, is that Gupta permits some
unintentional tort claims but drastically reduces the applicable
standard of care by charging educational institutions only to
avoid acting capriciously.  This approach applies the standard of
Gupta's third exception – "an educational institution does not
have license to act arbitrarily, capriciously, or in bad faith" –
to claims such as negligent misrepresentation and NIED.  See
Bass, 738 F. Supp. 2d at 327 (analyzing plaintiff's NIED claim by

asking whether a jury could reasonably find arbitrary or capricious conduct on the part of the defendant school).  It is possible this third interpretation differs only semantically from the second.  Each approach permits claims based on arbitrary, capricious or bad faith conduct; they simply apply different labels.  One converts the claim to one in contract, and the other permits it to proceed in tort.

In this case, it is unnecessary to resolve this unsettled issue of Connecticut law: the parties agree that plaintiff's negligent misrepresentation and NIED claims are cognizable provided he can allege arbitrary, capricious or bad faith conduct.  ECF No. 60, at 5-6.  The Court therefore analyzes plaintiff's negligent misrepresentation claim (and NIED claim) as such, bearing in mind that the claims fail without allegations of arbitrary, capricious or bad faith conduct.

Turning to the particulars of plaintiff's claim for negligent misrepresentation, I conclude that it fails.  The elements of a cause of action for negligent misrepresentation are that (1) the defendant made a misrepresentation of fact, (2) which the defendant knew or should have known was false, (3) the plaintiff reasonably relied on the representation, and (4) the plaintiff suffered pecuniary harm as a result.  Nazami v. Patrons Mut. Ins. Co., 280 Conn. 619, 626 (2006).  A promise to perform an act in the future can qualify as a misrepresentation of fact,

but only if the statement is false when made: that is, the promisor must, at the time of the promise, intend not to fulfill it. 456 Corp. v. United Natural Foods, Inc., No. 3:09 Civ. 1983 (JBA), 2011 WL 87292, at *4 (D. Conn. Jan. 11, 2011).

Here, the first two statements identified by plaintiff fail because it cannot plausibly be inferred they were false when made. Plaintiff says the University promised to provide him with a safe environment for learning and to treat him fairly. The University environment ultimately failed to meet expectations and University officials are alleged to have treated plaintiff badly. But this does not establish, or even suggest, that at the time these promises were made the University intended not to fulfill them. These two statements cannot support a claim.

The third statement on which plaintiff relies fails for a different reason. Plaintiff states that the University concealed from him its policy of disclosing student photographs to law enforcement. This argument founders because it is contradicted by materials plaintiff himself has attached to his complaint and memoranda. Fairfield's Handbook reads: "Another exception that permits disclosure without consent is the disclosure of directory information, which the law and Fairfield University define to include the following: a student's name, home address . . . visual image (photographs) . . . ." ECF No. 54-1, at 43. Given this documentary material, the Court is not obliged to accept

29

plaintiff's allegation as true.  See Brown v. N.Y. City Housing
Auth., No. 05 Civ. 10332 (VM), 2006 WL 1378599, at *1 (S.D.N.Y.
May 17, 2006).  The claim for negligent misrepresentation has
therefore been dismissed.

I. IIED

Defendants argue that plaintiff's IIED claim should be
dismissed because he has failed to plead extreme and outrageous
conduct.  Liability for IIED lies "only where the conduct [is] so
outrageous in character, and so extreme in degree, as to go
beyond all possible bounds of decency."  Morrissey v. Yale Univ.,
268 Conn. 426, 428 (2004).  Here, the IIED claims rest on two
separate incidents: the University's unwarranted imposition of
discipline and its participation in the arrest and initial
confinement.  I think the first occurrence does not support a
claim, but the second does.

Greenhouse v. Yale Univ., No. 3:05 Civ. 1429 (AHN), 2006 WL
473724 (D. Conn. Feb. 28, 2006), illustrates the difficulty of
sustaining an IIED claim based on an educational institution's
academic or disciplinary decisions.  Plaintiff Sally Greenhouse
had been a graduate student at the Yale School of Drama.  When
she complained to a faculty member that a male student was
stalking a different female student, faculty members responded
with calculated attempts to humiliate her.  Greenhouse
complained.  The Chair of the Drama School put her "on warning,"

and at the end of the academic year, the Drama School dismissed
her.  It dismissed no male students, even though their work was
inferior to hers.  Judge Nevas held that Greenhouse had failed to
allege extreme and outrageous conduct and dismissed her claim.

The University's alleged conduct in this case is mild in
comparison.  Plaintiff asserts only that University officials
dismissed him without a good reason.  The complaint in Greenhouse
asserted the same thing – indeed, it asserted that Greenhouse was
dismissed because of gender-based animosity.  And Greenhouse
alleged other offensive behavior in addition to her wrongful
dismissal.

Plaintiff identifies no case law tending to support the
conclusion that his claim passes muster.  Neither can I find a
case permitting a claim to go forward on remotely similar facts.
Accordingly, I conclude that the University's conduct in
disciplining the plaintiff does not support an IIED claim.

Plaintiff's IIED claim concerning his wrongful detention is
sufficiently supported, however.  Plaintiff alleges that Cleary
participated in his arrest and helped arrange for his
interrogation even though he knew probable cause was lacking.
Courts in this district have held that a person acts outrageously
when he urges, arranges or otherwise participates in another's
arrest or criminal prosecution even though he knows it to be
unfounded.  See, e.g., Troland v. Whitehead, No. 3:12 Civ. 822

31

(AVC), 2013 WL 1136720, at *5 (D. Conn. Mar. 18, 2013) (denying defendants' motion to dismiss IIED claim because "it can be inferred that Pettigrew knew the affidavit prepared by Hutchings and Whitehead contained fabricated information but nonetheless 'urged' Hutchings to make the arrest pursuant to the deficient warrant"); Rogers v. Apicella, 606 F. Supp. 2d 272, 293 (D. Conn. 2009) (permitting IIED claim to go forward in part because "officers told [plaintiff] that they knew she did not commit the crimes for which she was arrested, but that they would arrest and charge her anyway").  Cleary's conduct may have been less objectionable than the conduct at issue in the cited cases but that remains to be seen.

J. NIED

    Defendants argue that plaintiff's NIED claim should be dismissed under Gupta.  As discussed above, defendants accept that the negligence-based claims can go forward provided they involve allegations of arbitrary, capricious or bad faith conduct.  Applying this standard, the NIED claim is actionable insofar as it rests on the school's arbitrary decision to discipline the plaintiff even after finding he did not commit the assault.  The claim also is actionable insofar as it rests on his allegedly false arrest.

K. Right to Privacy

    Plaintiff alleges that the University violated his right to

32

privacy in two ways: it disclosed his photograph to the Town and aided Town officers in recording his interrogation.  Plaintiff's allegations do not state a claim under any of the four invasion of privacy torts recognized in Connecticut.

*Unreasonable intrusion on the seclusion of another.*  The gravamen of this tort is an intrusion into a plaintiff's private affairs.  Gleason v. Smolinski, No. NNHCV065005107S, 2009 WL 2506607, at *2 (Conn. Super. July 20, 2009).  The tort has little to do with the facts alleged in the complaint and I have found no case even suggesting that plaintiff can recover under this theory.

*Appropriation of another's name or likeness.*  Liability for this tort requires that the defendant publicize another's name or likeness to benefit from the "commercial or other values associated with the name or the likeness." Id. at 4.  Plaintiff does not allege that the University benefitted from the "commercial or other values" associated with his likeness, so this theory cannot support recovery.

*Unreasonable publicity given to another's private life and false light invasion of privacy.*  Each of these two theories requires a showing that the defendant subjected the plaintiff to "publicity." Deutsch v. Backus Corp., 51 Conn. L. Rptr. 337, at *13 (Conn. Super. Jan. 14, 2011); Pickering v. St. Mary's Hosp., No. UWYCV054002947S, 2005 WL 1971003, at *2 (Conn. Super. June

33

29, 2005).  "Publicity" means that "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."  Pickering, 2005 WL 1971003, at *2.  There is no allegation that the University "publicized" plaintiff's photograph in this manner.  Thus, the invasion of privacy claim has been dismissed.

L. Recklessness

Defendants argue that plaintiff's recklessness claim should be dismissed because he has failed to allege that the University's conduct created an unreasonable risk of bodily harm. I agree.  In Connecticut, "an unreasonable risk of bodily harm is essential in a reckless and wanton conduct claim."  Dongguk Univ. v. Yale Univ., 734 F.3d 113, 132 (2d Cir. 2013).

M. Aiding and Abetting

Defendants raise three arguments concerning plaintiff's aiding and abetting claim.

First, they argue that the claim against Cleary, insofar as it rests on the wrongful discipline counts, must be dismissed: there is no allegation Cleary had any hand in the discipline.  I agree.

Second, they argue that the claim against the University must be dismissed insofar as it rests on the wrongful detention claims, because there is no evidence that a policymaker at the

34

University participated in the detention in such a manner as to properly be considered an aider and abettor.  I agree.  The complaint contains no allegations to that effect.

This leaves only the claim that Cleary aided and abetted the Town in committing the constitutional violations alleged in Counts one and two.  These claims survive (for reasons given in Part II.A.) except insofar as they charge Cleary with aiding and abetting the violations that took place during the interrogation (as opposed to the initial detention and the violation arising from the *fact* of the interrogation).  Nothing in the complaint suggests that Cleary knew the Town officers planned to use heavy-handed and manipulative interrogation techniques, so he is not alleged to have "knowingly and substantially assisted" the principals, as is required for aiding and abetting liability.

III. <u>Conclusion</u>

Accordingly, defendants' motion to dismiss has been granted in part and denied in part.  To summarize:

- *Count One.*  Count One is dismissed.
- *Count Two.*  Count Two is dismissed without prejudice as to the University.  It is dismissed as to the University and Cleary insofar as liability is predicated on the provision of Mara's photograph to the Town.  It is dismissed as to the University and Cleary insofar as liability is predicated on violations that occurred during the interrogation.  Otherwise the motion to dismiss is denied as to Count Two.
- *Count Eight.*  Count Eight is dismissed as to the wrongful detention claims insofar as liability is predicated on the provision of Mara's photograph to the Town.  Otherwise, the motion to dismiss is denied as to the wrongful detention claims in Count Eight.  As for

the wrongful discipline claims in Count Eight, they are
dismissed except insofar as liability is predicated on
the University's decision to discipline Mara even
though it determined he did not commit the assault.

- *Count Nine.*  As to Count Nine, the motion to dismiss is
denied.
- *Count Ten.*  Count Ten is dismissed.
- *Count Eleven.*  The wrongful discipline claims asserted
in Count Eleven are dismissed.  The motion to dismiss
is denied as to the wrongful detention claims.
- *Count Twelve.*  The motion to dismiss is denied as to
the wrongful discipline claims asserted in Count Twelve
insofar as liability is predicated on the University's
decision to discipline Mara even though it determined
he did not commit the assault.  Otherwise, the wrongful
discipline claims asserted in Count Twelve are
dismissed.  The wrongful detention claims asserted in
Count Twelve are dismissed insofar as liability is
predicated on the provision of Mara's photograph to the
Town.  Otherwise, the motion to dismiss is denied
insofar as it is directed to the wrongful detention
claims asserted in Count Twelve.
- *Count Thirteen.*  Count Thirteen is dismissed.
- *Count Fourteen.*  Count Fourteen is dismissed.
- *Count Fifteen.*  Cleary is not liable as an aider and
abettor as to Counts 8-15.  The University is not
liable as to Counts 1-2.  Cleary is not liable as to
the allegation that Town officers used manipulation and
threats in interrogating Mara.

So ordered this 15th day of July 2015.


                              /s/
                    _____
                       Robert N. Chatigny
                    United States District Judge